IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–00669-ZLW-KMT


KEVIN P. KUBIE

     Plaintiff,

v.

TARGET CORPORATION, a Minnesota corporation,

     Defendant.

---

**ORDER**

---

This matter is before the court on Defendant's "Motion to Compel Discovery from Plaintiff" which was filed as part of "Defendant's Combined Discovery Motions Seeking Protective Order to Quash or Limit Plaintiff's Rule 30(b)(6) Deposition Notice" ("Motion"). [Doc. No. 60, filed November 29, 2009.]  Plaintiff responded on December 7, 2009 [Doc. No. 74] and Defendant filed a reply on December 11, 2009 [Doc. No. 80].  The court heard argument on this and other pending motions on December 16, 2009 and took this motion under advisement.

On December 28, 2009, the court received conventionally mailed medical records submitted under seal for *in camera* review.  Having now reviewed the medical records and being otherwise fully advised, the court finds the Motion to Compel should be granted based on the following.

On July 1, 2009, the Defendant requested the following information and documents from the then Plaintiff, Douglas E. Gilman:[1]

> Interrogatory No. 6: Please identify any individual, including but not limited to any physician, therapist, counselor, spiritual advisor or any other health care or mental health provider, with whom Plaintiff has communicated about his employment with, termination from or claims against Defendant. For each such person identified, please state the date of any such communication.

> Request for Production No. 12: For each and every health care or mental health provider identified in response to Interrogatory No. 6, please complete the Release attached hereto as Exhibit A.

Mr. Gilman responded "none" to interrogatory no. 6 and refused to sign a medical release in response to Request for Production No. 12.  (Mot. at 9-10.)  On August 4, 2009, Mr. Gilman filed an Amended Complaint adding a claim for dissability discrimination pursuant to Title 42 U.S.C. § 12101, the Americans with Disabilities Act ("ADA").  Following the filing of the Amended Complaint the Defendant propounded the following Request for Production of Documents:

> Request for Production No. 18: Any report, diagnosis, evaluation or other document and electronically stored information that you have received from every health care professional, including but not limited to, any physician, psychologist, psychiatrist, counselor or social worker, from whom you have sought or obtained treatment, advice or other professional services since June 2002. In addition, please execute the authorization, in the form attached as Exhibit A, enabling Defendant to obtain records from health care professionals, including but not limited to, physicians, psychologists, psychiatrists, counselors or social workers, from whom you have sought or obtained treatment, advice or other professional services since June 2002.

---

[1] On December 1, 2009, Bankruptcy Trustee Kevin Kubie was substituted for Mr. Gilman as plaintiff consistent with the Bankruptcy Trustee's role as the real party in interest.  [Order, Doc. No. 68.]

Mr. Gilman provided one document entitled "Progress Notes" for April 23, 2008 (Gilman 01821) signed by Kurt Lesh, MD (kwl) which contains, among other notes, the notation "A: 1. Noninsulin-dependent diabetes, newly diagnosed." Mr. Gilman claimed this was the only record in his possession "related to the diagnosis of diabetes." (Mot. at 10.) Mr. Gilman did not sign a release for other medical records and claimed that medical records designated as Gilman 00182[2] - 1832 were being withheld because they related to "unrelated medical conditions which are highly personal and will subject Plaintiff to unnecessary embarrassment, annoyance and oppression if required to be produced."

Defendant now seeks these withheld medical records and continues to seek releases for medical providers who have not been disclosed to the Defendant for the time period requested.

The scope of evidence subject to discovery under the Federal Rules is broad:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial of the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1). The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P 26(b)(1). *Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo 2004).

---

[2] This is apparently a typographical error since the records produced for *in camera* review by the court were labeled Gilman 01821 - 001831; the non-produced documents therefore began on Gilman 001822.

A close examination of the Amended Complaint reveals that Mr. Gilman inserted his medical condition into the case repeatedly.  Plaintiff claims that Mr. Gilman was counseled for attendance issues on "9 days of work due to his illness" (Amended Complaint ¶ 20); that he was "ill on those days and used his accumulated leave" (Amended Complaint ¶ 21); that on January 3, 2008, Mr. Gilman received a written warning for missing work on 12/21/07 and 12/28/07 (consecutive Fridays) (Amended Complaint ¶ 23); that on 12/21/07 and on 12/28/07  Mr. Gilman "was sick and suffering symptoms associated with diabetes" (Amended Complaint ¶ 24); that Mr. Gilman told the Human Resources Manager in May of 2008 that he had been diagnosed with diabetes and told her further that "his use of leave in December and January was the result of his diabetes" (Amended Complaint ¶ 32); that Mr. Gilman's supervisor, Ms. Miyamoto, knew that the warning received by Mr. Gilman in January 2008 "was the result of Mr. Gilman's absence from work and legitimate use of accumulated leave as a result of his diabetes" (Amended Complaint ¶ 37); and, that Mr. Gilman's diabetes "substantially limits one or more of his major life activities" (Amended Complaint  ¶ 25).  The Amended Complaint contains no less than six additional references to Mr. Gilman's use of leave for "illness" or "serious illness."  (Amended Complaint ¶¶ 30, 31, 38, 39, 49 (two times).)  Plaintiff also claims that Mr. Gilman's termination of employment was wrongfully predicated upon his diabetes.  (Id. ¶ 49.)  Thus, in claiming discrimination on the basis of disability, Plaintiff has clearly placed his medical condition directly at issue.  Additionally, whether or not Mr. Gilman used leave as a result of his diabetes or for some other reason, including another medical condition, is clearly and indisputably relevant to the claims in the Amended Complaint.

Neither the Supreme Court nor the Tenth Circuit has recognized a physician-patient privilege under federal common law. *See Whalen v. Roe*, 429 U.S. 589, 602, n. 28 ( 1977)("physician-patient privilege is unknown to the common law."); *see, also, Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (discussing the need for a psychotherapist-patient privilege and noting that unlike the physician-patient relationship, the psychotherapist-patient relationship is dependent upon an atmosphere of confidence and trust). Accordingly, the court's inquiry regarding the discoverability of plaintiff's general medical records is governed by relevancy standards contained in Fed.R.Civ.P. 26 and considerations of confidentiality. *LeFave v. Symbios, Inc.*, 99-Z-1217, 2000 WL 1644154, *2 (D. Colo. 2000).

The records which have been submitted to the court for review span the time period November 12, 2007 through April 23, 2008. There could hardly be a more relevant time frame for which Defendant would be entitled to medical records. It is during this five month period that Mr. Gilman was accruing what Defendant alleges were unacceptable absences for which he was reprimanded in January 2008. "Elements of a claim under the ADA touch upon the most private and intimate details of a plaintiff's life. ADA plaintiffs, like plaintiffs in an action for medical malpractice, waive all privileges and privacy interests related to their claim by virtue of filing the complaint." *Butler v. Burroughs Wellcome, Inc*., 920 F.Supp. 90, 92 (E.D.N.C.,1996)/ *See also, Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 129 (E.D. Pa. 1997) (In an ADA action, records of the plaintiff employee's medical providers were relevant to the extent that they related to the nature of her alleged disability and to side effects of medication which affected her ability to get to work on time); *LeFave*, at *2 (Medical records information is relevant to

5

plaintiff's claim for emotional distress damages and to defendants' defenses against plaintiff's emotional distress damages claim, because her medical records may reveal stressors unrelated to defendants which may have affected plaintiff's emotional well being.); *Owens v. Sprint/United Management Co.*, 221 F.R.D. 657, 660 (D. Kan. 2004) (Employer's interrogatory seeking identity of plaintiff's medical providers and her medical care, treatment, and counseling were relevant to plaintiff's Title VII claims because Plaintiff sought damages for emotional distress, and the records might indicate that there were other causes for whatever emotional reactions she may have had.)

Plaintiff argues that because the medical records concern conditions unrelated to his later diagnosis of diabetes, the records should be maintained as private. (Resp. at 7.) The court does not disagree that all medical records are private, and many medical records could also be embarrassing to some people, under some circumstances, some of the time. In this case, the primary justification given by the plaintiff for not releasing the medical records which have been submitted to the court are that they are embarrassing. The court again agrees that the medical records reviewed *in camera* (Gilman 01821 - 01831) could be embarrassing to Mr. Gilman if widely disseminated. However, Mr. Gilman's medical records would be produced under a confidentiality order and would not be subject to dissemination. *See Owens,* 221 F.R.D. at 660 ("Plaintiff's privacy concerns can be addressed by a Stipulated Protective Order between the parties.")

The fact of the matter is that, however sensitive the topic, the medical records in Mr. Gilman's case contain substantial evidence that during a time period critical to the case, Mr.

Gilman was suffering from conditions wholly unrelated to diabetes – conditions which, given the symptoms noted by the physician, could have had an impact on his work attendance.  One of the Progress Notes reviewed by the court suggests the presence of a condition for which a different kind of medical professional may have been providing services.  (Gilman 01825.)  Those conditions, documented with specificity in Dr. Lesh's medical records, could well refute the many allegations in the Amended Complaint that Mr. Gilman was missing work in the latter part of 2007 and early 2008 because of diabetic-related symptoms.  In fact, Mr. Gilman's diabetes was discovered somewhat unexpectedly in April 2008 while Dr. Lesh was having blood work completed for a completely different condition and complaint (Gilman 01822) and to "rule out underlying non-insulin-dependent diabetes" (Gilman 01823).  For Plaintiff's counsel to assert that these medical records are not highly relevant to the ADA claims in this case is untoward.  Clearly the defendant is entitled to defend the ADA action by showing that the absences claimed by Mr. Gilman to be caused by his diabetes were nothing of the sort, and discovery along such lines must, in fairness, be permitted.

Further, again as noted by the court in *Butler*,  920 F. Supp. at  92, questions of whether Mr. Gilman was terminated from his employment as a result of a condition which affects a major life activity impairment cannot be fully explored without "full and complete access to the plaintiff's medical records."  *Id*. at 92.

Given the absolute relevance the court finds in the documents submitted for *in camera* review, the court is left with substantial doubt that Plaintiff's counsel should be the gatekeeper of medical information.  There is a strong suggestion of at least one more medical provider and one

more condition which was affecting Mr. Gilman during the November 2007 through April 2008 time period but for which Dr. Lesh was apparently not the treating physician.  Also, Mr. Gilman saw Dr. Lesh or others in Dr. Lesh's office approximately six times in a five-month period.  This strongly suggests to the court that there may be other medical records relevant to the Plaintiff's ADA claim which have not been identified or produced.

Therefore it is **ORDERED**

Defendant's "Motion to Compel Discovery from Plaintiff" [Doc. No. 60] is **GRANTED**. The Plaintiff shall provide to Defendant the records submitted to the court for *in camera* review, Gilman 01821 - 01831, on or before January 10, 2010 with appropriate markings to ensure confidentiality pursuant to the Protective Order entered in this case [Doc. No. 15].

It is further **ORDERED**

Mr. Gilman shall answer in full and under oath Interrogatory No. 6 and respond fully to Request for Procution No. 18 for the time period beginning in August 2005.  For each medical provider identified, Mr. Gilman shall execute a HIPAA compliant release for records from the medical provider for the relevant time period.  Defendant will provide plaintiff with a form of acceptable release.

It is further **ORDERED**

The Clerk of Court is directed to retain, under SEAL, the conventionally filed medical

records discussed in this Order in the non-electronic case file.

Dated this 30th day of December, 2009.

BY THE COURT:

_____

Kathleen M. Tafoya
United States Magistrate Judge